IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.H., a minor through guardian ad litem, Sheila Brown, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF REDDING, et al.,<br><br>Defendants. | No. 2:20-CV-1435-DMC<br><br>ORDER |

Plaintiffs, who are proceeding with retained counsel, bring this civil action. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 88 (order of reassignment). Pending before the Court are the parties' motions in limine. See ECF Nos. 77, 78, and 83. The parties have filed opposition briefs. See ECF Nos. 93-97.

The parties appeared before the undersigned on July 6, 2023, at 8:30 a.m. via Zoom for a hearing. John Taylor, Esq., and Neil Gehlawat, Esq., appeared for Plaintiffs. Dale Allen, Jr., Esq., and Nicholas Syren, Esq., appeared for Defendants City of Redding, Rossi, Guterding, and Leonard. Paul Goyette, Esq., appeared for Defendant Kinneavy.

/ / /

/ / /

## I. BACKGROUND

This action proceeds on Plaintiffs' first amended complaint. See ECF No. 8. The following summary of Plaintiffs' allegations is taken from Plaintiffs' trial brief. See ECF No 83. Plaintiffs state:

> On August 27, 2018, officers from the Redding Police Department ("RPD") were dispatched to the intersection of Churn Creek Road and Cypress Avenue, regarding a man (Hames) who was obstructing traffic. RPD officer Rossi encountered Hames in the intersection. He observed that Hames had a knife in a sheath around his waist. Hames never threatened Rossi and took off running into a nearby shopping center within thirty seconds of Rossi's arrival at the intersection. Rossi followed Hames and notified other officers over radio that Hames fled into a shopping center and was armed with a knife. Rossi and three other officers – Kinneavy, Guterding, and Leonard – encountered Hames behind a Domino's Pizza on Larkspur Lane. Together, they formed a semi-circle around Hames and had their firearms pointed at him.
> Hames had his arms folded across his chest with the knife in his hand. He took two steps towards one of the officers, and at that point all of the Defendant officers fired their weapons at him. He was struck multiple times and died on scene. Tragically, none of the officers ever considered using less lethal force on him. The officers all testified that they shot Hames because they were concerned about the imminent threat he posed to Officer Guterding. Hames was over 23 feet away from Guterding when he was shot. There was also shrubbery between Hames and Guterding, and Guterding had ample room to retreat behind him. The entire shooting was captured on surveillance video.
> Corporal Schmidt – who was a supervisor for RPD – arrived on scene just before the shooting took place. He had a beanbag shotgun in his vehicle and intended to deploy it on Hames. He never alerted the other officers to the fact that he planned to deploy the beanbag shotgun. As a result, all of the officers used deadly force and killed Hames.
> Hames left behind his daughter, R.H., who was born in December 2017. She will be without her father for the rest of her life.

Id. at 2-3.

In their trial brief, Plaintiffs reference a single Section 1983 claim based on excessive force in violation of the Fourth Amendment. See id. at 3. A second Section 1983 claim under the Fourteenth Amendment has been voluntarily dismissed. See ECF No. 53. In their trial brief, Plaintiffs also list the following state law claims: (1) battery; (2) Bane Act violation; and (3) negligence. See ECF No. 83, pgs. 3-5. During briefing on the prior summary judgment motion, Plaintiffs abandoned their Monell claim against Defendant City of Redding. See ECF No. 39, pg. 2, n.1. The City of Redding remains potentially liable as an employer on Plaintiffs' state law claims. Plaintiffs seek compensatory damages for wrongful death and survival, punitive

damages, statutory damages, interest, and costs of suit.  See ECF No. 8, pg. 10.

The final pre-trial order directed the parties to include their motions in limine with trial briefs, which they have done.  The Court's most recent order after reassignment directed that oppositions to motions in limine be filed by July 5, 2023, and oppositions were timely filed.

## II.  DISCUSSION

Before the Court are three motions in limine filed by Plaintiffs, one motion in limine filed by Defendant Kinneavy, and nine filed by the remaining defendants (City of Redding, Rossi, Guterding, and Leonard).

### A.   Plaintiffs Motions in Limine

In their three motions in limine, Plaintiffs seek the following relief: (1) an order excluding evidence of Eric Hames' criminal history; (2) an order excluding evidence of drugs in Hames' body at the time of the shooting; and (3) an order excluding evidence of Hames' body tattoos and images from Hames' Facebook page and other social media.  See ECF No. 83, pgs. 6-10.  Plaintiffs have filed Exhibits A through D in support.  See ECF Nos. 83-1 (Exhibit A), 83-2 (Exhibit B), 83-3 (Exhibit C), and 83-4 (Exhibit D).

Defendants collectively oppose Motion Nos. 1 and 2.  Plaintiffs' Motion No. 3 is unopposed and was granted at the last hearing.

Motion No. 1 – Evidence of Hames' Criminal History

Plaintiffs contend evidence of Hames' criminal history is not relevant and should be excluded under Federal Rule of Evidence 402.  Plaintiffs also contend such evidence is more prejudicial than probative and should be excluded under Federal Rule of Evidence 403.  Finally, Plaintiff argue that the evidence should be excluded under Federal Rule of Evidence 404 as improper character evidence.

According to Plaintiffs, Defendants Rossi, Guterding, and Leonard had no knowledge of Hames' prior criminal history and, for this reason, this evidence is irrelevant as to Plaintiff's claims against them.  As to Defendant Kinneavy, Plaintiffs state that, while Kinneavy did in fact know about Hames' criminal history, "Kinneavy would have shot Hames on the date

1   of the subject shooting regardless of Hames' prior criminal history." ECF No. 83, pg. 7.

2   Plaintiffs cite no evidence in support of this contention.

3         The admissibility of "other act" evidence is governed by Federal Rule of Evidence

4   404(b) which provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the

5   character of a person in order to show action in conformity therewith. It may, however, be

6   admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

7   knowledge, identity, or absence of mistake or accident. The following test governs admissibility

8   under Rule 404(b):

> We have held that "other act" evidence is admissible under Rule 404(b) if the following test is satisfied: (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged. *See Bibo–Rodriguez,* 922 F.2d 1398, 1400 (9th Cir.1991); *United States v. Miller,* 874 F.2d 1255, 1268 (9th Cir.1989).
>
> Even if all four conditions are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. [footnote omitted]. *Id.*
>
> By its very terms, 404(b) does not distinguish between "prior" and "subsequent" acts. We have specifically allowed prior act evidence to prove knowledge. *United States v. Marsh,* 894 F.2d 1035, 1038 (9th Cir.1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990).

18         <u>United States v. Bibo-Rodriguez</u>, 922 F.2d 1398, 1400 (9th Cir. 1991)

19         Defendants Rossi, Guterding, and Leonard argue that evidence of Hames' prior

20   crimes is relevant to the measure of Plaintiffs' damages. <u>See</u> ECF No. 93. According to

21   Defendants:

> Here, the determination of wrongful death and/or survival damages are related to decedent's financial support, services, training and advice as well as the pecuniary value of the decedent's society and companionship. In addition, deceased plaintiff's lost wages, medical expenses, and any other pecuniary losses incurred before death are relevant in determining damages. Thus, the decedent's criminal history and inability to provide financial support, services and training along with society and companionship are directly relevant pursuant to F.R.E. 401 and 402 related to wrongful death and survival damages. Moreover, decedent's criminal history is highly probative as to decedent's society and companionship along with pecuniary losses as prescribed under relevant law. The probative value of witness testimony related to the effect of Mr. Hames' criminal history as it relates to the factors required to be analyzed by the jury is tantamount in this

> matter and highly probative. This probative value is highly outweighed against the fear of undue prejudice against the decedent.
> Additionally, Plaintiffs are likely to provide a life table during the damages portion that outlines an expected life expectancy of decedent Hames. Hames' criminal history is relevant and probative of the amount of damages determined by the jury related to the amount of years requested as to decedent's wages, pecuniary losses as well as the decedent's amount of time giving financial support and society and companionship. The damage valuation inclusion of Mr. Hames' criminal history is highly probative to the jury's damages evaluation.

Id. at 2-3.

In their opposition, Defendants offer to introduce evidence of Hames' criminal history only in the context of a phase 2 damages trial. See id. at 2, 3-4.

In his separate opposition, Defendant Kinneavy argues that evidence of Hames' prior criminal history is probative to bolster his own testimony regarding the incident, which will be based in part on Kinneavy's knowledge of Hames' prior criminal history. See ECF No. 95. Defendant Kinneavy also argues that the probative value of this evidence outweighs any prejudicial effect, which Kinneavy contends is manageable.

The Court agrees with Plaintiffs that evidence relating to Hames' criminal history which was unknown to the officers at the time of the shooting in August 2018 should not be admitted. Thus, the Court will grant Plaintiffs' motion as to Defendants Rossi, Guterding, and Leonard, all of whom had no knowledge of Hames' criminal history at the time of the shooting.

As to Defendant Kinneavy, who did have some knowledge of Hames' criminal history, Plaintiffs' motion will be denied. The Court will allow limited testimony from Defendant Kinneavy as to his knowledge of Hames' criminal history insofar as such testimony relates to Kinneavy's reasoning for using deadly force. Kinneavy will not be permitted to speculate as to Hames' criminal history beyond his own personal knowledge at the time of the shooting.

As to whether evidence of Hames' criminal history is relevant to the issue of Plaintiffs' damages, the Court reserves ruling on that issue pending laying of a proper foundation for such evidence.

/ / /

/ / /

Motion No. 2 – Evidence of Drugs in Hames' Body

Plaintiffs first argue that evidence of drugs in Hames' body at the time of the incident is not relevant and should be excluded under Federal Rule of Evidence 402. Second, Plaintiffs assert that such evidence is more prejudicial than probative and should be excluded under Federal Rule of Evidence 403. Finally, Plaintiffs argue that, because Defendants never retained a toxicology expert who could offer testimony regarding drugs in Hames' body, such evidence should be excluded under Federal Rule of Evidence 702 which precludes non-expert evidence about matters pertaining to scientific, technical, or specialized knowledge.

Defendants collectively oppose this motion. See ECF Nos. 94 (opposition) and 97 (joinder). Defendants contend that evidence of drugs in Hames' body, offered by a toxicologist, is admissible under the business records exception to the hearsay rule. See ECF No. 94, pg. 1. Defendants also argue evidence of drugs in Hames' body is probative of the credibility of the officers' testimony concerning their conduct and the totality of the circumstances. See id. at 1-2. Defendants indicate that the toxicology report will be introduced as part of the Shasta County autopsy report. See id. at 2. Defendants also indicate that their toxicology expert will rebut any inference Plaintiffs attempt to make to cast doubt on the credibility of the officers' testimony. See id. at 4. Defendants specifically state that this expert – Dr. Peterson – would not be testifying as to the effects of drugs in Hames' body. See id. According to Defendants, their opposition is based on an anticipated attack by Plaintiffs on the credibility of the defendant officers' testimony and that they have a right to offer probative rehabilitative evidence. See id. at 5.

Generally, evidence of a decedent's intoxication is not relevant to the excessive force inquiry. See Hayes v. County of San Diego, 736 F.3d 1223, 1232-33 (9th Cir. 2013); see also Turner v. Cnty. of Kern, No. 1:11-CV-1366 AWI SKO, 2014 WL 560834 (E.D. Cal. Feb. 13, 2014). In Turner, the court held that intoxication evidence is relevant only to explain a decedent's conduct and to corroborate the officers' version of events; the evidence is not relevant to the excessive force totality-of-the-circumstances inquiry. See id. Evidence of intoxication is also admissible to show an individual was under the influence of drugs or alcohol where conduct is in dispute and the evidence may support one version of events. See Sanchez v. Jiles, 2012 WL

6

13005996 at *23 (C.D. Cal. 2012) (holding evidence of intoxication was relevant because the individual's drug and alcohol use could "substantiate officers' observations," including "allegedly peculiar actions and ... refusal to obey officers' commands").

Here, the Court agrees with Plaintiffs that evidence of the quantities of drugs which might have been in Hames' body at the time of the shooting will not be allowed. Nor will the Court allow evidence as to the effects of any such drugs or quantities of drugs. Moreover, as the only source of this evidence proffered by the parties is a Shasta County autopsy report regarding Hames' death in August 2018, the autopsy report will not be admitted to show the presence of drugs in Hames' body in any quantity. The individual officers are, however, free to testify as to their own personal observations as to Hames' behavior at the time of the shooting. Further, if Plaintiffs open the door by attacking the officers' testimony regarding their perceptions and determinations at the time of the shooting, Defendants will then be allowed to respond by way of evidence from the autopsy report of drugs in Hames' body at the time.

Finally, as with Plaintiffs' Motion No. 2, the Court reserves ruling as to the relevance of this evidence in the context of damages, subject to a proper foundation being established.

<u>Motion No. 3 – Evidence of Hames' Social Media Posts</u>

Plaintiffs' Motion No. 3 is unopposed and was granted at the last hearing. See ECF No. 89.

**B.     Defendant Kinneavy's Motion in Limine**

In his single motion in limine, Defendant Kip Kinneavy seeks an order excluding admission into evidence of Defendant Kinneavy's personnel file. See ECF No. 77, pgs. 2-6.

Defendant Kinneavy argues in his single motion in limine that evidence from his personnel file is irrelevant and should be excluded under Federal Rule of Evidence 402, is more prejudicial than probative and should be excluded under Federal Rule of Evidence 403, and constitutes improper character evidence and should be excluded under Federal Rule of Evidence 404.

///

In opposition, Plaintiffs argue:

> Defendant Kinneavy asks the Court to exclude references to prior or subsequent incidents in his personnel file under FRE 404(b). It should be noted that Kinneavy was terminated from the Redding Police Department in 2020. The Department concluded that Kinneavy was being terminated (in part) because he was dishonest in his IA interview regarding the incident. This relates directly to Kinneavy's credibility as a witness and a party in this case. The Notice of Termination from the Redding Chief of Police will be emailed to the Court in lieu of it being filed in the public docket, since the document has been marked "confidential" by Defendants.
>   Plaintiffs contend that Kinneavy's credibility is an issue in this case. "Specific bad act evidence is admissible under Rule 608(b) for the purpose of attacking or supporting the witness [sic] credibility if it is probative of the witness' character for truthfulness or untruthfulness or challenges a witness's credibility." *United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002). Here, there is no doubt that Kinneavy's long discipline history – which includes multiple reprimands from the department in connection with his failure to file reports he claimed he filed – coupled with the Department's determination that he lied during an IA interview bears on his "truthfulness." As such, Plaintiffs should be able to cross-examine Kinneavy at trial by exposing the fact that he was terminated in part for being dishonest during an investigation by the Redding Police Department.

ECF No. 96, pgs. 3-4.

In support of their argument, Plaintiffs' counsel emailed directly to chambers a copy of Kinneavy's 2020 Notice of Termination. This document has not been filed on the public docket nor have Plaintiffs sought or obtained leave to file it under seal. Presumably the document was provided to defense in discovery.

Plaintiffs' position is persuasive under Rule 608(b) which allows for prior bad act evidence where, as here, the prior bad act is untruthfulness which goes to Kinneavy's credibility. This, however, is the limit of the probative value of Kinneavy's personnel file on the current showing. Defendant Kinneavy's motion will be granted <u>except</u> as to the 2020 Notice of Termination, which will be allowed for the limited purpose of attacking Kinneavy's credibility. Kinneavy is free to testify as to his explanation of the 2020 Notice of Termination, with the caveat that the Court will not permit re-litigation of Kinneavy's termination or the reasons therefor.

/ / /

/ / /

/ / /

8

**C.      Remaining Defendants' Motions in Limine**

In their nine motions in limine, the remaining defendants (City of Redding, Jose Rossi, Jay Gutterding, and Brett Leonard) seek the following relief: (1) an order excluding any reference to remedial measures; (2) an order excluding evidence of prior and/or subsequent bad acts of Defendants; (3) an order excluding any evidence not known to the officers at the time of the incident; (4) an order excluding testimony from Plaintiffs' counsel or witnesses Sheila Brown and Crystal Dunlap-Bennett regarding speculation as to Mr. Hames' mental condition; (5) an order excluding certain opinions by Plaintiffs' expert Roget Clark; (6) an order excluding cumulative, inflammatory, and/or irrelevant autopsy photographs; (7) an order excluding evidence of unrelated policies, practices, and procedures; (8) an order excluding mention or questioning related to the Redding Police Department's record-keeping policy of beanbag shotguns in patrol vehicles; and (9) an order seeking bifurcation of liability and punitive damages phases of the trial. See ECF No. 78, pgs. 8-266. Defendants have filed Exhibit A through C in support. See id.

Plaintiffs oppose Motion Nos. 1-5 only. Motion Nos. 6-8 are unopposed. Motion No. 9 was granted at the last hearing.

Motion No. 1 – Remedial Measures

Defendants contend evidence of remedial measures that would have made an earlier injury less likely is inadmissible under Federal Rule of Evidence 407. Defendants also contend such evidence is not relevant and should be excluded under Federal Rule of Evidence 402. Finally, Defendants argue such evidence is more prejudicial than probative and should be excluded under Federal Rule of Evidence 403.

Plaintiffs agree that evidence of remedial measures is not allowed under Rule 407. See ECF No. 96, pg. 2. Plaintiffs, however, take issue with the definition of "remedial measure" to the extent Defendants suggest that evidence of pre-incident tactical training, including use of less-than-lethal alternatives, should be excluded. See id. at 2-3.

/ / /

/ / /

9

Defendants' argument is persuasive.  Under Rule 407, evidence of subsequent remedial measures that would have made a prior injury or harm less likely to occur is not admissible to prove negligence or culpable conduct.  As to Plaintiffs' concern, the issue of tactical training <u>before</u> the incident does not encompass Defendants' motion regarding remedial measures, which are post-incident by definition.  This issue is not before the Court.  Defendants' Motion No. 1 will be granted.

Motion No. 2 – Evidence of Bad Acts

As with Defendant Kinneavy, the remaining defendants move to exclude evidence from the officers' personnel files, and for the same reasons.  In their opposition, Plaintiffs state that they do not intend to offer evidence of the officers' "bad acts" except as to impeach any testimony from the officers should they "open the door."  ECF No. 96, pg. 3.  Given this representation, Defendants' Motion No. 2 will be granted subject to the ruling being reconsidered should Defendants open the door to such evidence.

Motion Nos. 3 and 4 – Evidence Regarding Hames' Mental Condition

In these motions, Defendants seek exclusion of evidence relating to Plaintiff's mental condition not known to them at the time of the incident.  According to Defendants, such evidence is not relevant and is more prejudicial than probative and should be excluded under Federal Rules of Evidence 402 and 403.  In Motion No. 4, Defendants specifically seek exclusion of testimony from Plaintiffs' counsel or witnesses Sheila Brown (guardian ad litem) and Crystal Dunlap-Bennett (estate representative).  In this regard, Defendants argue such evidence is hearsay under Federal Rule of Evidence 801 and should be excluded pursuant to Federal Rule of Evidence 802.

In their opposition, Plaintiffs state that they agree with the proposition that evidence not known to the officers at the time of the shooting is not admissible.  See ECF No. 96, pg. 4. As to testimony from witnesses Brown and Dunlap-Barnett, Plaintiffs agree that a sufficient foundation wound need to be established and suggest the matter can be resolved prior to such witnesses testifying.  See id. at 5.

/ / /

According to Plaintiffs, Defendant Rossi has testified that he believed Hames was either under the influence of a controlled substance or suffering from a mental health condition. See id. at 4. Plaintiffs expect that Defendants will elicit testimony from Rossi that he believed Hames was under the influence of drugs at the time of the shooting. See id. Plaintiffs seek the opportunity to introduce evidence of Hames' mental health condition to explore the alternative observation Rossi expressed in his earlier testimony. See id.

The Court finds that evidence of Plaintiff's mental health condition at the time of the shooting will be excluded because the individual officers were not aware of any such condition at the time. Unless there is evidence that a particular officer had actual knowledge at the time of the shooting that Hames was suffering from a mental health condition, the officers' testimony will be limited to their own observations regarding Hames' conduct.

<u>Motion No. 5 – Certain Opinions of Plaintiffs' Expert Witness</u>

Defendants seek an order excluding certain testimony expected to be offered by Plaintiffs' police expert, Roger Clark. The testimony at issue is: (1) medical opinions regarding Hames' mental condition at the time of the incident; (2) legal conclusions; (3) opinions based on speculation and conjecture; and (4) any opinions concerning the sufficiency of Defendant City of Redding's official policies, customs, practices, training, supervision, discipline, or ratification of conduct by decision-makers. Defendants contend this testimony is barred under Federal Rules of Evidence 402, 403, 702, and 704.

Rule 702 provides that a qualified expert may offer opinion testimony. Rule 704(a) provides that an opinion "is not objectionable just because it embraces an ultimate issue." Rule 704(b) provides an exception <u>in criminal cases</u> precluding opinions regarding a defendant's mental state or condition that constitutes an element of the charged crime or a defense. Thus, Rule 704 does not provide a basis to exclude testimony from Mr. Clark.

Rule 702(b) requires that expert opinion testimony be based on sufficient facts or data. Thus, any speculative opinions offered by Mr. Clark should be excluded. This would include Mr. Clark's opinions assessing the officers' subjective fear at the time of the incident because such opinions would not be based on sufficient facts given that Mr. Clark has not offered

11

any basis for such opinions.

As to opinions concerning legal conclusions, Defendants point to Mr. Clark's report in which he opines: "In my opinion, under the version of events given by the Defendants (and confirmed by video recording), their use of a firearm to shoot and kill Mr. Hames was excessive and unreasonable under the circumstances, and was a violation of training, policy, and law (as taught by POST)." This is an opinion which is both an ultimate conclusion of law and misstatement of the law. It is a misstatement of the law to the extent Mr. Clark suggests that inconsistency with the POST standards per se results in a constitutional violation. To the extent Mr. Clark will testify that Defendants' conduct was unreasonable and excessive, those are legal conclusions which are reserved to the trier of fact. See Crow Tribe of Indians v. Racicot, 87 F.3d 1039, 1045 (9th Cir. 1996); Chavez v. Yong Kyum Won, 2020 WL 5203451, at *4 (E.D. Cal. 2020). This prohibition would also extend to any opinions Mr. Clark may offer regarding the credibility of any of the various witnesses, to any testimony constituting medical conclusions, legl conclusions or speculation.

Finally, as to opinions relating to the sufficiency of policies, customs, or practices, such opinions are no longer relevant given the abandonment of any Monell claims against Defendant City of Redding and the City's vicarious liability on remaining state law claims.

Defendants' Motion No. 5 relating to Mr. Clark's testimony will be granted consistent with the order in Olson as Next Friend of H.J. v. City of Burnet, Texas, 2021 WL 1289376, at *4 (W.D. Tex. 2021). There, the court ordered:

> In conclusion, Clark's opinions that *anything* Butler did was "criminal" or "constitute[s] excessive force" are inadmissible. Clark's opinions that *anything* that occurred in this case violates any constitutional rights are inadmissible. Clark's opinion that the shooting was "needless and senseless" is inadmissible. Provided he is able to support this conclusion, Clark may testify that Butler's actions fell short of police officer standards, but he may not phrase his opinions as a legal conclusion (for instance, "Butler's actions were objectively unreasonable, because..."). Clark may not opine as to the intent or state of mind of Brandon Jacque... Clark may not opine that video from the body camera is "clear and without ambiguity" as that information is unhelpful to the jury. Clark may not opine that the City of Burnet's "custom and policy was to ignore the use of potentially deadly

///

12

force" as that is the exact legal conclusion the jury must decide in holding the City liable.

Id.

In their opposition, Plaintiffs take heed of the Court's tentative ruling announced at the prior hearing and state that whatever ruling applies to Mr. Clark should also apply to Defendants' expert, Mr. Zwickey. See ECF No. 96, pgs. 5-6. The Court agrees. This ruling shall apply to both sides' police practices experts. In particular, no police practices expert shall testify as to an ultimate issue of fact or law, such as whether the officers' conduct was or was not reasonable, or whether the officers' conduct did or did not constitute excessive force. These are questions solely for the jury. The parties are cautioned the prepare their experts carefully in light of this ruling. Any deviation into improper areas of expert testimony may result in a mistrial being declared.

### Motion No. 6 – Autopsy Photographs

Defendants seek to exclude photographs from Mr. Hames' autopsy as more prejudicial than probative under Federal Rule of Evidence 403. Defendants' Motion No. 6 is unopposed and will be granted.

### Motion Nos. 7 and 8 – Evidence of Policies, Practices, Procedures, and Logs

In Motion No. 7, Defendants seek exclusion of any evidence relating to policies, practices, and procedures of the Redding Police Department, except those related to the alleged excessive force incident at issue here, because Plaintiffs have withdrawn their Monell claim against Defendant City of Redding. In Motion No. 8, Defendants argue that the Court should exclude evidence of the lack of logs relating to beanbag shotguns in police vehicles. Defendants contend such evidence is both irrelevant and more prejudicial than probative and should be excluded under Federal Rules of Evidence 402 and 403. Given that Plaintiffs have abandoned their Monell claim and any liability against the City of Redding would be vicarious liability based on the liability of the individual officers, evidence of the City of Redding's policies, practices, procedures, or logs for the Redding Police Department is not relevant and Defendants' Motion Nos. 7 and 8, which are unopposed, will be granted.

Motion No. 9 – Bifurcation

Defendants' Motion No. 9 is unopposed and was granted at the last hearing. See ECF No. 89.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiffs' Motion No. 1 regarding Hames' criminal history is granted as to Defendants Rossi, Guterding, and Leonard, and denied as to Defendant Kinneavy.

2. Plaintiffs' Motion No. 2 regarding evidence of drugs in Hames' body is granted for purposes of liability unless Plaintiffs open the door to such evidence and reserved for purposes of damages subject to proper foundation.

3. Plaintiffs' Motion No. 3 regarding evidence of Hames' body tattoos and social media posts is unopposed and was granted at the prior hearing.

4. Defendant Kinneavy's motion relating to evidence from his personnel file is granted as to the content of his personnel file except as to the 2020 Notice of Termination, which will be allowed into evidence for purposes of impeachment.

5. Remaining Defendants' Motion No. 1 relating to post-incident remedial measures is granted.

6. Remaining Defendants' Motion No. 2 relating to evidence of prior or subsequent bad acts by the Defendant Officers is granted unless Defendants open the door to such evidence which will then be allowed for impeachment purposes.

7. Remaining Defendants' Motion Nos. 3 and 4 relating to evidence of Hames' mental condition are granted except as to Hames' mental condition actually known to the officers at the time of the shooting, such knowledge to be established by proper foundation laid by the officers' testimony before collateral evidence of Hames' mental condition at the time will be permitted. Any testimony by family members or friends of Hames re his mental condition will only be permitted following a proper evidentiary foundation.

/ / /

8. Remaining Defendants' Motion No. 5 relating to evidence from Plaintiffs' expert witness on police practices Roger Clark is granted as explained above, such ruling to apply equally to Defendants' police practices expert.

9. Remaining Defendants' Motion No. 9 seeking bifurcation, and such remaining pretrial motions as identified above as unopposed are granted as ordered at the prior hearing.

10. The Clerk of the Court is directed to terminate ECF Nos. 77, 78, and 83 as pending motions.

Dated:  July 6, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE